IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONNA AVILA, *et al.*,                                            No. C 99-3941 SI; No. C 06-2555 SI

        Plaintiffs,                                                  **ORDER RE: DISCOVERY**

  v.

WILLITS ENVIRONMENTAL TRUST, *et al.*,

        Defendants.
                                                        /

The parties have submitted letter briefs[1] concerning a number of discovery disputes.

Expert depositions: As part of their discovery responses, plaintiffs submitted declarations from three different experts: Dr. Alan S. Levin, Dr. William Sawyer, and Dr. Linda Remy. Plaintiffs also cited or otherwise referred to previously submitted declarations from Dr. Rash Ghosh and Dr. Levin. Defendants assert that they must have the opportunity to obtain relevant documents and depose each of these experts so defendants can test the admissibility of their conclusions at the appropriate time, and also to understand the nature and scope of the experts' opinions so defendants can identify appropriate responsive experts.

As one example of defendants' need to conduct discovery, defendants note that Dr. Levin appears to be advancing the same theory of exposure and causation that he relied upon for the *prima facie* plaintiffs, which this Court excluded in an order dated February 6, 2008. Defendants state that the only apparent difference between the two theories is that, in Dr. Levin's most recent report, he includes hexavalent chromium in the group of chemicals that he claims were used at the Remco site. Dr. Levin

---

[1] The letter briefs are found at Docket Nos. 1067, 1069-1073 in *Avila*, and Docket Nos. 190 and 192 in *Nickerman*.

1 also relies, at least in part, on the same four blood test results that the Court previously rejected.
2 Defendants assert that they need to depose Dr. Levin in order to determine what is new and different
3 about his most recent opinion. Defendants provide similar specific examples of why they need to
4 depose plaintiffs' other experts.

5 Plaintiffs do not respond specifically to any of defendants' arguments. Instead, plaintiffs contend
6 that it would be unfair to allow defendants to depose plaintiffs' experts at this juncture, and that the
7 Court should require defendants to designate their experts now. Plaintiffs argue that if defendants are
8 permitted to depose their experts, such discovery would undermine plaintiffs' right to supplement their
9 expert reports, and would curtail plaintiffs' right to a jury trial. Plaintiffs do not explain how allowing
10 defendants to depose their experts would infringe either of these rights.[2]

11 The Court finds that plaintiffs' objections lack merit, and that it is appropriate for defendants to
12 conduct discovery related to the expert declarations recently provided by plaintiffs. As provided in the
13 most recent case management order, the parties shall designate experts by January 18, 2009, rebuttal
14 experts by February 5, 2009, and the expert discovery cut-off is February 26, 2009. Thus, there is no
15 basis for plaintiffs' assertion that defendants should be required to designate their experts now. Further,
16 there is nothing in the case management order that precludes defendants from conducting discovery
17 related to plaintiffs' experts now. Defendants state – and plaintiffs do not deny – that defendants made
18 their experts available for deposition during the *prima facie* process, and that plaintiffs elected not to
19 take their depositions or conduct any other discovery.

20 <u>Plaintiffs' RFA responses</u>: Plaintiffs denied RFAs directed at each plaintiff asking the plaintiff
21 to admit that he or she did not have any analytical results showing the presence of dioxin congeners or
22 hazardous substances in his or her blood or other bodily fluids or tissues. In response to questioning by

---

[2] In addition, it is unclear to the Court to what plaintiffs are referring when they state that they have a right to "supplement" expert reports. As set forth in the January 23, 2008 order, plaintiffs were required to provide responses to defendants' discovery requests by March 15, 2008, including discovery from experts regarding exposure and causation. The Court rejected plaintiffs' argument that defendants' discovery requests impermissibly sought expert opinion, noting that this litigation has been pending for over 8 years, and that plaintiffs have long been on notice of the need to provide evidence of exposure and causation. To the extent plaintiffs seek to "supplement" any of the experts' opinions beyond what was contained in the experts' reports, the Court is of the view that such supplementation would be improper. However, the Court will address that matter if and when plaintiffs seek to "supplement" those reports.

2

defendants, plaintiffs' counsel stated that the denials were not based on blood tests for each plaintiff, but rather based on the four blood test results that plaintiffs filed in connection with the *prima facie* plaintiffs' showing. Plaintiffs assert that these results can be extrapolated to show the presence of all subject chemicals in all plaintiffs. Plaintiffs also state that their denials are based upon forthcoming blood test results from plaintiffs Sam Ligosky and Craig Carbrey.[3]

The Court previously held, *inter alia*, that there was no scientific basis to extrapolate the four blood test results to other plaintiffs. Further, the plain language of the RFAs is directed to each plaintiff individually, and thus there is no basis for plaintiffs' assertion that they can rely on blood testing performed on other individuals to show "the presence of any dioxin congener in YOUR blood or other bodily fluids or tissues." With regard to the forthcoming test results from Sam Ligosky and Craig Carbrey, plaintiffs acknowledge that the deadline for producing such results has long since passed. In the Court's January 23, 2008 order, the Court set a deadline of March 15, 2008 for plaintiffs to respond to defendants' discovery requests, and stated that "if any plaintiff fails to provide discovery responses, a negative inference and/or issue preclusion will result." Plaintiffs state that they waited until the end of February 2008 to submit the blood for testing in Germany, and that they were expecting to receive the results before the March 15, 2008 deadline but that "there was unforeseen delay in processing the testing." As of May 16, 2008, plaintiffs were still waiting for the test results. The Court finds that plaintiffs have not shown any good cause for the delay and failure to meet the March 2008 deadline, and plaintiffs will not be permitted to rely on these test results. Accordingly, plaintiffs are directed to amend their RFA responses to state that, aside from Donna Avila, no plaintiff has had any testing performed on their blood.

Amending RPD and Interrogatory responses: In response to numerous Requests for Production of Documents and Interrogatories, plaintiffs responded by providing the same response for all plaintiffs, and by directing defendants to masses of documents without identifying specific documents or sections of those documents. For example, in response to a request stating "Please produce all DOCUMENTS constituting, reflecting or providing a basis for any expert opinion regarding PLAINTIFF'S alleged

---

[3] Mr. Carbrey settled his claims and has been dismissed from this action.

3

exposure to HAZARDOUS SUBSTANCES for which YOU claim Defendants are responsible in this action," plaintiffs provided the following joint response: "Plaintiff agrees to produce documents in this requested category. In addition to what plaintiff has produced previously in *Avila* and *Nickerman*, Plaintiffs have referenced these in the responses to interrogatories and are equally available to you." Docket No. 1067 Ex. E. As another example, plaintiffs provided this same joint response to an RPD asking "Please produce all DOCUMENTS, not previously produced in this action, constituting records of any health care provider regarding Plaintiff's health or treatment by such health care provider." *Id.*

The Court has repeatedly instructed plaintiffs that such general, undifferentiated responses are improper. Plaintiffs cannot generally refer defendants to literally thousands of pages of documents. Further, because these cases involve multiple plaintiffs, it is not possible for plaintiffs to provide a joint, generic response to requests asking for plaintiff-specific information. Accordingly, the Court directs plaintiffs to revise and amend their responses to defendants' RPDs and interrogatories such that they contain citations to specific documents and specific places in those documents that they believe contain responsive information. In instances when defendants may already have access to responsive documents, plaintiffs must at least provide a list of these documents and identify the sections containing the responsive information. When plaintiffs reference documents not in defendants' possession, they must produce these documents to defendants. Finally, plaintiffs must provide a unique response for all requests seeking plaintiff-specific information.

Costs of production of documents: Several of defendants' RPDs sought documents upon which plaintiffs' experts relied. The parties dispute whether defendants should be required to pay half the cost of producing these documents. Plaintiffs do not cite any authority for their position that defendants should share the cost. Accordingly, the Court holds that plaintiffs are responsible for the cost of producing these documents.

Motion practice: Defendants request the Court's permission to file several motions directly or indirectly related to plaintiffs' March 2008 discovery responses. The Court GRANTS this request.

**IT IS SO ORDERED.**

Dated: July 9, 2008

SUSAN ILLSTON
United States District Judge

4